UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREW MICHAEL MUSAELIAN,

    Petitioner,

    v.

ROBERT OCHS,

    Respondent.

                              /

No. C 10-605 SI (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed pursuant to 28 U.S.C. § 2254 by a *pro se* state prisoner. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2007, petitioner was convicted by a Sonoma County Superior Court jury of vehicle theft and forgery, consequent to which petitioner was sentenced to 120 days in jail (which was reduced to 55 days of home confinement), and three years of probation. Evidence presented at trial demonstrated that petitioner illegally seized the vehicles of Timothy Heskett and Ann Stringer in an attempt to satisfy a debt of which petitioner was assignee. Petitioner seized the

vehicles despite having been told by law enforcement that only the sheriff's department could legally seize such property. The evidence also shows that petitioner forged documents in order to facilitate his seizure of the vehicles. As grounds for federal habeas relief, petitioner claims that (1) the trial court's refusal to instruct the jury on the claim-of-right defense violated his right to due process; (2) the prosecutor suppressed evidence in violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963); and (3) defense counsel rendered ineffective assistance.

**STANDARD OF REVIEW**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making

2

the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### 1. Claim-of-Right Instruction

Petitioner claims that the trial court violated his Fourteenth Amendment rights by failing to give, *sua sponte*, a claim-of-right instruction (CALCRIM No. 1863), that is, an instruction that he was not guilty of theft if he had a good faith belief that he had a right to take Heskett's and Stringer's vehicles. The relevant facts are as follows:

> Defense counsel initially offered an instruction based upon CALCRIM No. 1863 explaining the claim-of-right defense. He also requested a special instruction on mistake of law. The prosecutor objected that the claim-of-right instruction did not apply to the facts, and argued that there was no substantial evidence to support a mistake-of-law instruction. The court stated it would give the mistake-of-law instruction. After ascertaining that defense counsel also wanted the claim-of-right instruction, the court asked: "Why is it not covered by the ignorance or mistake of law instruction that I'm going to give?" Defense counsel replied: "I think the Court is right. I think it is covered, and I think I can argue it that way, and so I don't want to confuse the jury with competing defenses on the same point, so I believe it would be best for me to withdraw that."
>
> The court gave the following special instruction on mistake of law: "Ignorance or mistake of law can negate the existence of a specific intent and is a defense to the charges alleged in Counts One, Two, Three and Four if [petitioner] honestly believed that he had the right to take the subject property. The evidence must support a reasonable inference that any such claimed belief was held in good faith."

(Ans., Ex. F at 16–17.) The state appellate court rejected petitioner's claim because (1) the given instruction "substantially overlapped" with the requested instruction, (2) there was insufficient evidence that petitioner mistakenly believed he had a legal right to the vehicles, and (3) the evidence that his belief was not held in good faith was "overwhelming":

> Three different individuals had informed [petitioner] unequivocally that only the sheriff's department could seize the vehicles of the judgment debtor: Before he towed either of the victims' vehicles, [petitioner] had asked Deputy Sheriff Conner if he could seize a vehicle himself. Deputy Sheriff Conner specifically told [petitioner] only the sheriff's department can perform an automobile levy. Then again, upon learning of the fee for a vehicle levy, [petitioner] questioned whether the sheriff's department handled vehicle levies and Natalie Getsinger

3

[, an employee of the Sonoma County Sheriff's Department] assured him the sheriff's department does handle vehicle levies, referring him to the applicable section of the Code of Civil Procedure. Finally, when [petitioner], despite the clear information he had already received that this was not a lawful procedure, tried to enlist [process server] Magdowski to assist in his plan to tow Stringer's vehicle, Magdowski told him that a writ of possession had to be done through the sheriff, and that she, as a process server, could not do it. In response to information regarding the correct procedure, [petitioner] complained the fee was too high, or the process was too slow. With respect to Stringer's vehicle, the jury found he resorted to using forged documents in arranging for it to be towed. In order to find [petitioner] guilty of the forgery counts, the jury had to find intent to defraud, which was defined as the intention "to deceive another person either to cause a loss of money, or to cause damage to, a legal, financial, or property right." (CALCRIM No. 1905.) By convicting him on the forgery counts the jury necessarily found he had such intent, which would be incompatible with a finding that he believed in good faith he had a right to Stringer's vehicle. The foregoing evidence overwhelmingly supports an inference [petitioner] deliberately chose to persist in the belief he could somehow engage in self-help, despite being fully aware of the contrary information. Even if a [petitioner] actually believes he acted lawfully, if "he was aware of contrary facts which rendered such a belief wholly unreasonable" the belief is not held in good faith. [Citation removed.]

. . . .

Both instructions inform the jury it cannot find a defendant had the specific intent required for theft-related counts if he held a good faith belief that he had a right to the property he took. The mistake-of-law instruction informed the jury a mistake of law could negate specific intent if "[petitioner] honestly believed that he had the right to take the subject property. The evidence must support a reasonable inference that any such claimed belief was held in good faith." CALCRIM No. 1863 would have informed the jury that [petitioner] did not have the requisite specific intent if he "obtained the property under a claim of right," which requires a belief "in good faith that (he/she) had a right to the specific property . . . and (he/she) openly took it." (CALCRIM No. 1863.)

[Petitioner] nevertheless argues giving the CALCRIM No. 1863 claim-of-right instruction might have produced a more favorable result because the mistake-of-law instruction the court gave described the good faith belief in terms of a "right *to take*" the property (italics added), whereas he construes CALCRIM No. 1863 to require only a good faith belief that he "had a *right to* the specific property" (italics added). [Petitioner] acknowledges the evidence that he had a good faith belief in a right "to take" the vehicle by resorting to self-help, instead of going through the sheriff's office to perform a vehicle levy, was relatively weak, but reasons that under CALCRIM No. 1863, he would only have had to persuade the jury that he believed he had a "right to" the property. He argues the evidence in support of a finding that he had a "right to" the victims' property was much stronger because he, as the assignee of judgments against both victims, was indisputably a creditor, and so in that general sense he had a "right" to their property, even if it was less clear he believed in good faith that he had a right to use self-help to take it. The distinction [petitioner] attempts to draw is based upon a misinterpretation of CALCRIM No. 1863. Although CALCRIM No. 1863 does not use the phrase "right to take " that appears in the special instruction the court gave on mistake of law, CALCRIM No. 1863 also defines the claim of right in terms of taking because it requires the jury to find the [petitioner] "obtained property under a claim of right."

(*Id.* at 20–21, 22–23.)

The state appellate court reasonably determined that there was no violation of petitioner's constitutional rights. Although a defendant is entitled to jury instructions that embody his defense theory, due process does not require that an instruction be given unless the evidence supports it. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005). Here, there was no evidence to support petitioner's requested instruction, that is, there is no evidence that petitioner had a good faith belief that he had a right to the specific property. Petitioner, as assignee, had a right to legally collect money to satisfy a debt, not a personal right to the victims' vehicles. Not only does the evidence show overwhelmingly that law enforcement had instructed him that he could not legally seize the vehicles himself, it also shows that petitioner forged paperwork to facilitate his extralegal seizure. The record being such, there is no evidence on which a jury could conclude that petitioner "believed in good faith that [he] had a right to the specific property." CALCRIM No. 1863.[1] Accordingly, petitioner's claim is DENIED for want of merit.

## 2. *Brady* Claim

Petitioner claims that the prosecutor suppressed evidence in violation of petitioner's due process rights as those rights are defined in *Brady v. Maryland*, cited above. Petitioner claims that the police refused to hand over the tape recording of a phone call petitioner made to the police on the day he seized Heskett's vehicle. According to petitioner, the tape recording would have shown that he and the process server made seven calls to advise the police as to what was taking place and that they would drop off the paperwork to the police station after the seizure was completed. Petitioner also claims that the prosecutor violated his *Brady* due process rights when it failed to disclose copies of witness statements and their investigative reports.

---

[1] Petitioner claims that counsel rendered ineffective assistance when he failed to press to have the instruction given. Such claim is hereby DENIED on grounds that, as the above analysis shows, petitioner has failed to demonstrate that he was prejudiced by counsel's actions. *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011).

5

1    The government has an obligation to surrender favorable evidence that is "material either
2 to guilt or to punishment," even if the defendant does not request disclosure of such evidence.
3 *Brady*, 373 U.S. at 87; *United States v. Agurs*, 427 U.S. 97, 107 (1976). To establish a *Brady*
4 violation, the defendant must show that the favorable evidence was suppressed by the state,
5 either willfully or inadvertently, resulting in prejudice. *Morris v. Ylst*, 447 F.3d 735, 741 (9th
6 Cir. 2006). Evidence is material "if there is a reasonable probability that, had the evidence been
7 disclosed to the defense, the result of the proceeding would have been different." *United States
8 v. Bagley*, 473 U.S. 667, 682 (1985) (citation omitted). A "reasonable probability is a
9 probability sufficient to undermine confidence in the outcome." (*Id.*) (internal quotation marks
10 and citation omitted).

    Petitioner has not shown that a *Brady* violation occurred. First, he has not shown that such a recording existed or that, even if it existed, the police failed to disclose it to the defense. Second, even if the tape existed and had been disclosed to the defense, petitioner has not shown that the evidence was material. The evidence would have been largely duplicative, as there is no dispute that petitioner seized the car on that date in the company of another man. Also, his statements that he informed the police that he was seizing Heskett's vehicle raise only the slightest inference that petitioner at the time believed his actions were being conducted in good faith. This inference loses even this slight significance when one considers that if petitioner believed he was seizing the vehicle in good faith, he would not need to inform the police of the seizure. Also, petitioner does not allege that the police told him during these alleged phone calls that his actions were lawful or that he was acting in accordance with legitimate seizure procedure. On such a record, petitioner has not shown that there is a reasonably probability that had the government disclosed the allegedly withheld evidence the result of the proceeding would have been different. Petitioner's claim regarding disclosure of reports and witness statements lacks any evidentiary support. Accordingly, the claim is DENIED for want of merit.

### 3. Assistance of Counsel

Petitioner claims that defense counsel rendered ineffective assistance when he failed to (A) object to admission of evidence of threats to Heskett and Stringer, (B) object to instances of prosecutorial misconduct, and (c) perform necessary investigations and give competent advice.

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 650). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

#### A. Threats Against Heskett and Stringer

The relevant facts are:

Without objection from defense counsel, the prosecutor asked Timothy Heskett whether [petitioner] made "any sort of threats towards you." Heskett responded that approximately a month after [petitioner] towed Heskett's vehicle, [petitioner] called and said he would follow Heskett's wife to work and garnish her wages. He would also follow Heskett from paint job to paint job and collect money directly from Heskett's customers. In that same call, and in many subsequent calls, [petitioner] urged Heskett to sign a note for $20,000 secured by his house "to get this thing over with."

7

> The prosecutor also asked Stringer what [petitioner] said in his first telephone call to her. Stringer testified that [petitioner] told her if she did not pay he would have her arrested, and described how he got off the phone for a second and then came back on "talking about somebody hitting something." When the prosecutor asked Stringer to describe [petitioner]'s demeanor during this conversation, she responded that it was "threatening" and "kind of crazy. It just wasn't logical, what he was saying or how he was saying it." When asked about [petitioner]'s demeanor in a subsequent meeting outside a courtroom, she replied it was "[t]hreatening," and described his offer to go away for five years if she gave him $5,000 as "almost like . . . he owned me. He was going to get this no matter what it took." The prosecutor asked whether [petitioner] made any threats in a second court meeting. Stringer replied, "Not directly, but at one point we were walking up the stairs, and he was behind me, and he asked me how my dog Baxter was doing, and I took that to be a threat, because I never told him my dog's name, and it just — the dog's my baby." Later the prosecutor asked if there were "any other factors or moments . . . that contributed to your feeling of being threatened by this [petitioner]." Stringer could not recall any other specific statement, but described [petitioner]'s manner as arrogant and dismissive. Defense counsel did not object to any of the foregoing.

(Ans., Ex. F at 8–9.) Petitioner contends that defense counsel should have objected to this evidence because it was (1) irrelevant, force or fear not being elements of the offenses, (2) speculative and called for a legal conclusion, and (3) prejudicial.

The state appellate court flatly rejected petitioner's ineffective assistance claims, concluding that any objections would have been futile:

> An objection that the evidence of threats and intimidating behavior was irrelevant was without merit, and would have been futile. The primary defense theory was [petitioner] did not have the specific intent to commit the crimes with which he was charged, and [petitioner] mistakenly, but in good faith, believed he had the legal right to seize the victims' vehicles to collect the debts they owed him. One of the specific arguments defense counsel made to the jury was [petitioner] misunderstood the law and had no reason to take the vehicles unless he believed in good faith he could lawfully do so. According to defense counsel, [petitioner] would have nothing to gain by taking the vehicles and having to return them once the victims discovered they were missing. The prosecutor rebutted this defense theory by arguing [petitioner] knew he was acting "above the law," and consciously disregarded all information he received to the contrary from [law enforcement and the process server] Conner, Getsinger and Magdowski. [Petitioner] hoped that by taking the vehicles he would get the attention of the victims, and even if the vehicles were eventually returned, the unpleasant experience would aid his ongoing effort to pressure them into settling their debts. These arguments illustrate the relevance of the evidence of [petitioner]'s statements and conduct that the victims perceived as threatening to show intent, lack of mistake, and lack of good faith. Counsel therefore was not incompetent for failing to object that the evidence was irrelevant, and if such an objection had been made the court would certainly have overruled it.
> . . . .

8

> An objection to evidence of threats and intimidating behavior, on the ground it was "speculative," would also have been overruled. [Petitioner] focuses primarily upon Stringer's testimony that [petitioner] made a veiled threat concerning her dog. [Petitioner] argues that Stringer's testimony interpreting [petitioner]'s statement as an implied threat was objectionable because it was "completely speculative." To the contrary, [petitioner] was not Stringer's personal friend and it therefore was unusual that he would ask her about her dog. In the circumstances, [petitioner]'s comment was sufficiently susceptible to the interpretation that it was an implied threat to be relevant and admissible to show intent, and a lack of a good faith belief that he was acting lawfully to collect the debt owed to him. As the percipient witness, Stringer was not "speculating" when she testified regarding the comment [petitioner] made to her, the circumstances in which the comment was made and how she perceived it. It was ultimately for the jury to decide, as a matter of fact, whether the comment was intended to convey a veiled threat. [Citation removed.] For the same reasons, Heskett's testimony on the subject of statements [petitioner] made to him that he perceived to be threats also was not subject to the objection that it was "speculation."

(*Id.* at 10, 11) (footnote removed).

The state appellate court reasonably determined that petitioner did not receive ineffective assistance of counsel. As the state appellate court noted, evidence of threats was relevant to counter petitioner's good faith defense, a defense he strenuously argued in support of and asked for instructions on. A prosecutor may fairly rebut the defense's contentions. *See United States v. Bagley*, 772 F.2d 482, 494 (9th Cir. 1985). Because such evidence was highly relevant to counter such defense, any objection by defense counsel would almost certainly have been rejected. Its relevance also defeats petitioner's claim that such evidence was "speculative." Because it is both reasonable and not prejudicial for defense counsel to forgo a meritless objection, *see Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005), petitioner's claim cannot succeed. Furthermore, even if the evidence was prejudicial, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Petitioner's claim is DENIED for want of merit.

9

### B. Alleged Prosecutorial Misconduct

Petitioner claims that defense counsel rendered ineffective assistance when he failed to object to the prosecutor's closing argument statement that petitioner was a "bully" toward the victims and "wanted to threaten these people." (Ans., Ex. F at 12–13.) The state appellate court found that the prosecutor's statements were permissible comments on the evidence and on the defense theory of good faith. Consequently, defense counsel's not having objected did not constitute ineffective assistance.

The state appellate court reasonably determined that petitioner did not receive ineffective assistance. The record supports the state court's determination that the comments were permissible, especially when one considers the testimony regarding the threats. Because the comments were permissible, it is reasonable to conclude that the trial court would have rejected any objection by defense counsel. Therefore, petitioner has not shown that counsel rendered ineffective assistance, as it is reasonable and not prejudicial for defense counsel to forgo a meritless objection. S*ee Juan H.*, 408 F.3d at 1273.

### C. Investigation and Advice

Petitioner claims that trial counsel rendered ineffective assistance by (1) failing to investigate the procedure for money judgments and levies, (2) failing to investigate mitigating evidence, (3) failing to call witnesses, including a collection attorney who was an expert on vehicle levies and the law of the enforcement of judgments, and (4) refusing to allow petitioner to testify. Petitioner did not raise these claims on direct appeal.

Petitioner's claims lack merit. As to (1) and (2), petitioner's allegations are wholly conclusory and fail to identify specific evidence, as opposed to offering speculation, that supports his assertion. Failure to identify such information is a failure to show that trial counsel's performance was deficient, or that the alleged deficiency resulted in prejudice. *See Gallego v. McDaniel*, 124 F.3d 1065, 1077 (9th Cir. 1997).

As to (3), petitioner has failed to show how such witnesses (a collection attorney, the process server, and two witnesses who would have testified that other counties allow process servers to conduct vehicle levies) would have aided his defense. The collection attorney's expert testimony would have been cumulative, evidence of collection law having been presented at trial by other witnesses. Where the evidence does not warrant it, the failure to call an expert does not amount to ineffective assistance of counsel. *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999). As to the process server, petitioner has failed to state exactly how the server's testimony would have aided his defense. As to the other two witnesses, it is irrelevant how vehicle levies are conducted in counties other than the county in which petitioner was charged and convicted.

As to (4), petitioner has not overcome the presumption that he willingly waived his right to testify. Waiver of the right may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so. *See United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) (citation removed). A defendant who wants to reject his attorney's advice and take the stand may do so by insisting on testifying, speaking to the court or discharging his lawyer. *See id.* A defendant waives the right to testify if he remains silent in the face of his attorney's decision not to call him as a witness. *United States v. Pino-Noriega*, 189 F.3d 1089, 1094–95 (9th Cir. 1999); *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993). There is no evidence in the record that petitioner spoke to the court or tried to discharge his lawyer. Accordingly, petitioner has not shown that counsel prevented him from testifying, and therefore has not shown ineffective assistance.

Petitioner's ineffective assistance of counsel claims are DENIED for want of merit.

## CONCLUSION

The state court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

11

Petitioner's motion for an evidentiary hearing (Docket No. 22) is also DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent, terminate Docket No. 22, and close the file.

**IT IS SO ORDERED**.

DATED: December 5, 2011

SUSAN ILLSTON
United States District Judge